PER CURIAM.
Pursuant to article V, section 9 of the Florida Constitution, and in accordance with the criteria, additional factors, and procedures set forth in Florida Rule of Judicial Administration 2.035, we hereby certify the need for twenty-nine additional judgeships during the fiscal year 1986-87, as follows:
*1260 [[Image here]]
On March 20, 1985 we certified the need for a total of twenty new judgeships for FY 1985-86. The Legislature funded thirteen additional judgeships during the 1985 legislative session, eight circuit court and five county court. We have received requests for thirty-five new judgeships for FY 1986-87. Six of the requests for FY 1986-87 are for recertification of judge-ships not authorized in the 1985 session of the legislature. Four of the judgeships were requested for the second year of the biennium, in last year’s certification.
FINDINGS
DISTRICT COURTS OF APPEAL
In 1979, the Appellate Structure Commission recommended a standard of no more than 250 primary case filings for each appellate judge. On February 23,1984 this court adopted that standard as part of the certification criteria and procedures of Florida Rule of Judicial Administration 2.035, acknowledging that an appellate judge should not be required to handle more than 250 primary case filings per year. The 250 primary case filings per judge standard was reaffirmed by the Courts Restructure Commission in its report of February 1,1986.
In reality, each judge’s case load would be three times the number of primary cases because district courts sit in panels of three, and each judge has two secondary case assignments for each primary assignment. All of the district courts presently exceed this standard. In order to ensure the integrity of the appellate process, this excessive case load should be reduced, to the 250 case per judge standard.
Florida’s district courts experienced a general leveling off in filings in 1983 and 1984. However, in 1985 all five courts realized increased filing levels. Projections for 1986 forecast 1,207 more filings than in 1985. Florida’s district courts of appeal have consistently ranked high among the country’s intermediate appellate courts in filings per judge and number of published opinions.
The judges of the district courts of appeal have worked diligently to keep abreast of case loads in excess of the recommended standard, in spite of the fact that no new *1261 judgeships have been authorized for the district courts of appeal since 1982. Further, the courts have endeavored to improve the manner in which cases are managed and employ procedural innovations to improve efficiency, such as placing selected cases on a fast track and reducing briefing requirements. The district courts of appeal have also begun implementation of office automation systems to speed word processing tasks, improve case management and enhance legal research.
Notwithstanding these efforts, additional judges are required. Accordingly, we certify the need for five new district court of appeal judgeships in FY 1986-87. The authorization of these judicial positions is requested as the first phase of a two year effort to bring the number of primary case filings down to 250 per judge, for the affected courts.
We also encourage continued funding for the office automation systems in all five district courts. These resources, when collectively employed, will enable Florida’s district courts of appeal to better manage what is clearly one of the largest case loads in the country.
First Appellate District. The First District, which currently has twelve judges, requests one additional judge for FY 1986-87. To achieve the 250 primary case filing standard in 1986, the First District would need one additional judge. While filings in the First District leveled off from 1982-84, they increased in 1985.-An increase of approximately 175 additional filings is forecast for 1986. Motions practice before this court has increased, with twenty-five to thirty motions being filed each workday. Workers’ compensation cases handled by the court are extremely complicated. Moreover, the statutory law applicable to such cases is constantly changing, thereby requiring research and related work that is not necessary in the other district courts. Similarly, the many administrative appeals, filed with the First District because of its location in the state capital, are quite time consuming. Judges and law clerks must be conversant with Chapter 120, as well as the statutes and rules that govern or affect the many agencies covered by that chapter. Accordingly, we are certifying the need for one judgeship for FY 1986-87.
Additionally, the First District Court of Appeal has undertaken a major office automation project that will enhance its word processing, case management and legal research capabilities. The systems being developed serve as prototypes and are being adapted for the other four district courts of appeal. Therefore, we ask the continued support of the Legislature for this effort on all five district courts.
Second Appellate District. The Second District currently has ten judges, and the need for one additional judge was certified in 1985. In order to meet the 250 primary case filing standard in 1986, the Second District Court of Appeal would require two additional judges. We certify the need for one additional judgeship for FY 1986-87.
The court had 283 filings per judge and produced 259 dispositions per judge in 1984. Filings increased to 299 per judge in 1985 while dispositions jumped to 287 per judge. We find these factors plus an increase in total filings of 365 cases, from 1983 to 1985, to justify the need for the one additional judgeship.
Fourth Appellate District. The Fourth District has nine judges, and we certify the need for two additional judges in FY 1986-87.
The court had 307 filings per judge and produced 318 dispositions per judge in 1984. These figures increased to 322 filings and 327 dispositions per judge in 1985. The Fourth District continues to have the largest number of pending cases of the five district courts of appeal. The developing backlog is a function of an unusually high percentage of civil cases, which are generally more complex. Many involve appeals from trial court judgments in cases classified as complex litigation. This has resulted in the Court granting oral argument in fewer cases and disposing of a high percentage of cases without opinion.
*1262 In order to fully achieve the 250 primary case filing standard in 1986, three additional judges would be required in the Fourth District. At this time, however, we certify the need for only two additional judges.
Fifth Appellate District. The Fifth District has had six judges since its creation in 1979. We certify the need for one additional judge in FY 1986-87. This is a recertifi-cation of a need that has existed for the past three years.
The Fifth District continues to have the highest ratio of population per judge of any district and a high attorney per judge ratio. Filings have increased every year since the Fifth District’s creation. In 1985, the Court had 447 more filings than in 1980, at which time the Fifth District’s primary case filings were at the 250 per judge level. Projections show a continued growth trend, including an additional 161 filings in 1986, over the 1985 total. The court had 325 filings per judge and produced 354 dispositions per judge in 1985. This ranked it highest in filings per judge and second in dispositions per judge.
In order to fully achieve the 250 primary case filing standard in 1986, two additional judgeships would be required, but we certify only one at this time.
CIRCUIT AND COUNTY COURTS
At the trial court level, case filing statistics are not as significant in relation to other criteria and factors as they are at the appellate level. Geographic size, attorneys per judge, the presence of nonlawyer county judges, the extent to which county judges are utilized in circuit court, the location of state institutions within the circuit, the availability and use of retired judges and masters, resident and transient population, population at risk[1], law enforcement activities, and case complexity are all considered in evaluating the need for additional trial court judgeships. See Rule of Judicial Administration 2.035(b). Thus, while a standard of not more than 250 primary case filings has been developed for the district courts, no similar standard can be applied at the trial court level. A caseload standard at the trial level that ignores variations among the circuits would not be a correct measure of the need for additional judges.
Caseload information on the trial courts, available at the state level, is derived through the Summary Reporting System (SRS), which was implemented in 1977. The clerks of the circuit courts provide monthly tabulations of case filing and disposition statistics to the State Courts Administrator’s Office. While regular reviews of up to one third of the counties annually indicate substantial compliance by the clerks with reporting guidelines, it is recognized that improved measures of judicial workload are needed. Several steps have been taken in this regard. The Summary Reporting System has been redesigned based on almost two years of work by the Court Statistics and Workload Committee. Changes, effective January 1, 1986, include: refinements in data definitions, to eliminate ambiguity in reporting requirements; modification of reporting categories to more accurately reflect judicial workload; and establishment of audit trails to ensure uniformity in reporting. The application of the delphi technique to measure variations in the complexity of cases disposed of by the different circuit courts was begun experimentally during the 1985 certification process. The delphi information was updated and considered during this year’s certification process as well. Finally, the clerks of court have begun filing quarterly reports on pending caseloads in all circuit courts. The initial report,' reflecting pending case status as of December 31, 1985, was also considered by the Court in formulating this year’s certification. The foregoing changes yielded improved data for use in determining the need for new judgeships.
*1263 In addition to case related data, the process of certifying the need for new circuit and county judges has included an assessment of steps Florida’s trial judiciary has taken to improve the operation of their courts. There has been a strong response to the time standards that were issued by administrative order of Chief Justice Boyd in April of 1985, at both the circuit and county levels. Judges across the state reviewed and disposed of large numbers of cases that had been pending without activity for long periods of time. Other older cases were set for trial and expedited to prompt conclusion. While the existence of the time standards has increased the pressure on the trial and appellate judiciary, the timely disposition of cases is deemed essential to the effective administration of justice.
The trial courts have responded to workload pressures in other ways. Dispute resolution alternatives are employed in most courts for selected types of cases. Citizen dispute settlement, juvenile arbitration, mediation and conciliation in family cases, small claims mediation, landlord and tenant mediation and general or special masters, are all relied upon more heavily. Procedural innovations such as the use of uniform motions calendars, improved judicial control of cases, stricter continuance policies, and regular reviews of pending cases, have been used extensively. Virtually all of Florida’s circuit courts and most county courts have established routine backup procedures where judges, whose calendars may cancel due to settlements or pleas, are reassigned to assist other judges with hearings or trial dockets. Many judges’ calendars include blocks of time allocated specifically for the hearing of child support and domestic violence matters that must be expedited. In sum, Florida’s trial judiciary is identifying and effectively employing alternatives to the establishment of new judge-ships in many areas of the state.
In spite of such programmatic and procedural innovations, there remains a need for twenty-four new judgeships at the trial level. A number of factors have contributed to increased caseloads in Florida’s trial courts, which can only be remedied by the authorization of additional judgeships. Two statutes passed by the 1984 Legislature have continued to result in increased judicial workload. The domestic violence and child support enforcement statutes, while they reflect critically needed changes in Florida law, have significantly increased hearing time. Florida’s DUI law also continues to result in increased trials. Judges report that DUI and other trials are becoming longer, largely as a function of increased motions practice and increased numbers of attorneys in most jurisdictions. Finally, the increase in crime rates experienced in many jurisdictions has contributed to a significant increase in criminal filings and related trial activity during the later part of 1985.
Statewide, circuit filings increased by 9.1% from 1984 to 1985. The increases in circuit criminal and civil filings were 7.5% and 12.2% respectively. County filings, excluding civil traffic infractions, increased 8.5%. County criminal and civil filings increased 8% and 12% respectively. Many courts carried large case inventories into the 1986 calendar year, notwithstanding diligent efforts to dispose of older cases on their dockets.
The primary considerations prompting our certification of need for the respective judicial circuits are as follows:
First Judicial Circuit (Escambia, Oka-loosa, Santa Rosa and Walton Counties). There are currently fifteen circuit and nine county court judges in the First Circuit. We certify the need for one additional circuit judgeship for FY 1986-87.
The last circuit judgeship was added to this Court in 1982. Since that time, there has been a steady increase in filings, with a 14.2% increase since 1983. The First Circuit ranks tenth in filings per judge.
The Court has refrained from requesting additional judgeships for each of the last two years, preferring instead to address workload increases through the assignment of retired judges. A total of 183 retired judge days were paid in FY 1984-85. The *1264 First Circuit reported a total of 111.4 days of county judge time in circuit court in FY 1984-85. However, the use of county judges at the circuit level is limited by the fact there are two nonlawyer judges, in Escambia and Santa Rosa Counties.
Caseload increases have also been addressed via the establishment of alternative dispute resolution programs. In excess of 400 cases were handled via citizen dispute settlement, family mediation and juvenile arbitration, during 1985. Close to 5,800 cases were handled through a very effective worthless check program. Nonetheless, increases at the circuit level, a reduction in the number of available retired judges and the impact of a large transient/tourist population warrant the establishment of an additional judgeship for this circuit.
Second Judicial Circuit (Franklin, Gadsden, Jefferson, Leon, Liberty and Wakulla Counties). There are currently nine circuit and eight county judges in the Second Circuit. We certify the need for one additional circuit judge in FY 1986-87.
The last new circuit judgeship for this court was established in 1984. Total filings have increased 12.7% since 1983. While the Second Circuit is ranked sixteenth in filings per judge and nineteenth in jury trials per judge, it has had an inordinate number of capital and other serious felony cases. Only six circuits report higher criminal pending caseloads than this circuit. The Second Circuit was also ranked seventh in total pending cases per judge, at the end of 1985. Finally, the Second Circuit reports significant increases in law enforcement personnel, as well as the staff of the offices of the public defender and state attorney. The fact that Leon County includes the state capitol adds a large number of actions involving state government to the Court’s workload. Similarly, a large student population of approximately 25,000 is not reflected in general population statistics. An exceptional amount of judicial time is consumed by travel since the circuit consists of six counties. Caseload increases in the outlying counties, particularly Gadsden County, have required the commitment of additional judge time.
Third Judicial Circuit (Columbia, Dixie, Hamilton, Lafayette, Madison, Suwannee and Taylor Counties). There are currently four circuit and six county judges in the Third Circuit. We certify the need for one additional circuit judge for FY 1986-87.
This circuit is ranked first in jury trials per judge. The six counties in the circuit also cover a large geographical area. Over 40,000 travel miles were logged in 1984 by the circuit judges serving the six county area. The Court reports a large number of complex products liability cases involving agricultural products.
The last new judgeship for this circuit was authorized in 1976. There are no resident retired judges in the Third Circuit. Thus, county judges have been called upon to assist at the circuit level. A total of 123.8 days were paid in FY 1984-85.
Fourth Judicial Circuit (Clay, Duval and Nassau Counties). There are currently twenty-five circuit and fourteen county court judges in the Fourth Circuit. The need for one additional circuit judgeship was certified in each of the last three years, and a new circuit judge was authorized in 1985. The Fourth Circuit had originally requested a new circuit judgeship in both years of the biennium. We certify the need for an additional circuit judge for FY 1986-87, as requested.
The circuit judgeship added last year was the first since 1980. One county court judge is a nonlawyer and, therefore, cannot assist in circuit jurisdiction. The Fourth Circuit has realized an 18.6 percent increase in filings since 1983. Circuit filings have increased significantly in the outlying counties, Clay County in particular. The one new judgeship authorized last year will not be sufficient to allow the Court to keep pace with the rate of growth. The Fourth Circuit is ranked seventh in weighted dispositions per judge.
The Court has also been heavily reliant on the assistance of retired judges and has *1265 handled over 7,000 cases via alternative dispute resolution and diversion programs.
Fifth Judicial Circuit (Citrus, Hernan-do, Lake, Marion and Sumter Counties). The Fifth Circuit currently has eleven circuit and seven county court judges. We certify the need for an additional circuit judge and an additional county judge for Marion County.
In spite of having received a new circuit judge in 1984, the Fifth Circuit is ranked fifth in the ratio of filings per judge and fourth in dispositions per judge. It is ranked second in the ratio of population per judge and is projected to experience a high rate of growth in population through 1990, retaining that number two ranking. Three of its seven county court judges cannot assist on the circuit bench, as they are nonlawyer judges. No retired judges reside in the Fifth Circuit. Additionally, the circuit covers a geographic area of 4,160 square miles and has five state correctional institutions located within its boundaries. Cross assignment of one judge to help another, when his or her calendar clears, is often difficult because of distance.
Finally, the criminal caseload of the Fifth Circuit has increased dramatically. The States Attorney reports that 56% more in-formations, involving a 39% increase in counts and 50% more defendants, were filed during the first eleven months of 1985, over the same period in 1984.
No new county judges have been authorized for Marion County since 1973. Caseloads have increased to levels which rank Marion County second in filings per judge and ninth in dispositions per judge. A 45.9% increase in filings since 1984 and a 52.8% increase since 1983 have made the addition of a third county judge a necessity*
Sixth Judicial Circuit (Pasco and Pinel-las Counties). The Sixth Circuit currently has thirty circuit and fourteen county court judges, three of whom are in Pasco County. The need for one additional county court judge for Pinellas County was certified in 1984 and 1985. No county judgeships were authorized in either year. We certify the need for two county judgeships in FY 1986-87. In addition, we certify the need for two circuit judges in FY 1986-87.
In 1985, Pinellas County ranked fifth in county court filings per judge and fourth in dispositions per judge. The county continues to realize tremendous growth and is ranked eighth in population per judge. Pi-nellas County has moved up in the rankings in all three of the foregoing categories since last year. The county court operates in multiple locations. Travel between these locations has become increasingly timé consuming, making the sharing of judicial resources difficult. The last new county court judgeship was created in Pinellas County in 1979, and that is the only new county judgeship that has been created for that Court since 1976. In the last three years alone, filings in Pinellas County have increased approximately 13%. The majority of that increase occurred between 1984 and 1985 when filings increased by 4,976 cases.
Filings at the circuit level increased 14% since 1984 and 20.7% since 1983. The Sixth Circuit ranked second in weighted dispositions per judge indicating a more complex mix of cases. The 1986 projections suggest a further increase in filings, leaving filings per judge in excess of 1,800 cases. Our certification of need for two additional circuit judges is also based on the high ratio of population per judge, projected population growth, and geographic considerations relating to travel time within the circuit (in view of the five primary and two satellite courthouses).
Because of the increases in Pinellas County court filings and a high ratio of jury trials per judge, the county judges are not readily available to assist with circuit court cases. The circuit court was required to utilize one hundred seventy-three retired judge days in 1985. The Sixth Circuit has also made a strong effort to employ citizen dispute settlement, juvenile mediation-arbitration and family mediation, to supplement and reduce the case load burden of judges. In excess of 4,000 cases were handled through these programs in *1266 1985. Masters heard in excess of 1,100 cases in 1985.
Seventh Judicial Circuit (Volusia, St. Johns, Flagler, and Putnam Counties). The Seventh Judicial Circuit currently has fourteen circuit and eleven county judgeships. We certify the need for one additional circuit judgeship in FY 1986-87.
The Seventh Circuit ranks fourth among the twenty circuits in filings per judge and ninth in dispositions per judge. As of December 31, 1985, this circuit had the third highest pending caseload per judge at 1,344 cases. Overall, filings increased 12.5% from 1984 to 1985 and by 19.6% since 1983.
The Seventh Circuit has also realized tremendous population growth and has a large tourist/transient population, as well. Geographical constraints exist in that the chief judge has to allocate judicial resources over a large four county area. At the same time, the- assignment of more judges has been necessary in the Deltona area.
Eighth Judicial Circuit (Alachua, Baker, Bradford, Gilchrist, Levy, and Union Counties). The Eighth Circuit currently has nine circuit and nine county court judges. We certify the need for one additional county judge for Alachua County.
Alachua County has experienced a 13.7 percent increase in filings since 1983. An increase of more than 2,800 new filings occurred between 1984 and 1985, leaving the county ranked fourteenth among the 67 counties. Alachua County ranked third in dispositions per judge. However, because county court judges who are eligible to assist with circuit cases are used regularly for that purpose, judicial resources in the county court have been reduced. A total of 368 partial or full days of county judge time was committed in that regard. The eight state correctional institutions located in the circuit contribute additional workload. Similarly, the Gainesville area has an annual college population of 41,000 students, not reflected in general population statistics. Finally, the geography of the circuit, which is 100 miles long and 50 miles wide make the allocation of judicial resources more difficult. The last new county judgeship was authorized ten years ago.
Ninth Judicial Circuit (Orange and Osceola Counties). The Ninth Circuit currently has twenty circuit and thirteen county court judges. One additional circuit judgeship and one county judgeship were certified and authorized last year. However, we certify the need for an additional circuit judgeship in FY 1986-87.
The 1985 filings in circuit court increased 11% over 1984 and 18.2% over 1983. The Ninth Circuit was ranked fifth in jury trials per judge and reports that jury trials cannot be set earlier than five to six months in advance.
There has been a significant growth in population in the Ninth Circuit since 1975, and that trend is expected to continue. The circuit also has a large transient and tourist population and is ranked sixth in population at risk. The Ninth Circuit ranks fourth in ratio of attorneys per judge. Three hundred twelve retired judge days were required in the circuit in 1985, and 141 days of additional compensation were paid county judges for circuit work. The Ninth Circuit reported that use of county judges in circuit court exceeded 200 days. In excess of 1,000 cases were handled through alternative dispute resolution programs in 1985.
Eleventh Judicial Circuit (Dade County). The Eleventh Circuit currently has fifty-nine circuit and thirty-four county court judges. One circuit judgeship and two county judgeships were certified last year, and one new judge was authorized at each level. We recertify the need for one additional county court judgeship in FY 1986-87.
Dade County ranks second in the state in ratio of attorneys per judge. It continues to have a high tourist and transient population. In addition, Dade County is first among the sixty-seven counties in population at risk, which contributes to the high criminal caseload in that county, in both circuit and county court. A large Spanish speaking population, has required the court *1267 to employ a large staff of interpreters. In excess of 64,000 translations were made in 1984. The use of interpreters has the effect of almost doubling hearing or trial time, when they are necessary.
Total filings in county court have increased by 6.8% or 15,208 cases since 1983, leaving Dade County ranked sixth in filings per judge and first in dispositions per judge. Continued increases in the number of sworn law enforcement personnel in the county have resulted in increases in criminal filings, at both the circuit and county court level.
County court judges have been assisting on the circuit bench, thereby increasing the workload pressures at the county level. A total of four hundred sixty-nine days of additional compensation were paid county judges for circuit work in FY 1984-85. With high county court case loads, county judges must now attend to their own dockets. Notwithstanding the extensive use of citizen dispute settlement and other dispute resolution alternatives, there is a need for one new county judgeship.
Twelfth Judicial Circuit. (DeSoto, Manatee and Sarasota Counties). The Twelfth Circuit currently has eleven circuit and seven county court judges, with four county court judges in Sarasota County, two in Manatee and one in DeSoto. The need for an additional county court judgeship for Manatee County was certified last year, for the second year of the biennium. However, due to a slight decline in filings from 1984 to 1985, and an increased workload at the circuit level, we certify the need for an additional circuit judgeship in FY 1986-87.
The last circuit judgeship for the Twelfth Circuit was added in 1982. Filings have increased steadily. The Court has realized a 15.9% increase in filings since 1983, leaving it ranked third among the twenty circuits. The Twelfth Circuit is ranked sixth in dispositions per judge. It is sixth in pending cases per judge, as of December 31, 1985. The circuit court required 138 retired judge days in FY 1984-85. In excess of 100 county judge days were paid during the same fiscal year.
A high rate of population growth is forecast for the three counties in the Twelfth Judicial Circuit. It is currently ranked fourth among the twenty circuits and is forecast to retain that rank through 1990. The Twelfth Circuit ranks sixth in attorneys per judge.
Thirteenth Judicial Circuit (Hillsbor-ough County). The Thirteenth Circuit has twenty-five circuit and eleven county judges. Five additional circuit judges have been requested. We certify the need for three circuit judges for FY 1986-87.
The Thirteenth Circuit is ranked seventh in both filings and dispositions per judge. It is ranked fifth among the circuits in pending cases per judge, reported as of December 31, 1985. Total filings are expected to grow by an additional 4% in 1986. The court has experienced a 7.2% increase in filings since 1983 and a 10.6% increase in total jury trials. This has resulted in a 16.7% increase in jury trials per judge.
The Thirteenth Circuit has realized a doubling of jury trial activity during the last half of 1985. The greatest problems exist in the criminal division of the court. Hillsborough County is faced with a jail cap, and the judges in the criminal division have the highest pending caseload reported for any of the twenty judicial circuits at 4,206 cases per judge. Of the seven large urban courts in Florida, the Thirteenth Circuit is estimated to have the highest filings per judge ratio, in its criminal division. The Thirteenth Circuit ranks fourth among the twenty circuits in population at risk, which is indicative of criminal activity. Hillsborough County ranks third in index crimes reported in 1985. It reports that fewer negoitated pleas are being accepted by the prosecutor and more cases are being taken to trial. At the same time, the court has experienced a 19.1% increase in law enforcement personnel from 1982 to 1985. The court ranks third in weighted dispositions per judge.
Both county and retired judges have been committed to assist at the circuit level. A total of 189 retired judge days were *1268 paid in FY 1984-85. A temporary sixth criminal division has been created utilizing a retired judge during the current fiscal year. Additionally, fifty-six days of county judge time were paid in FY 1984-85.
The use of dispute resolution alternatives has been expanded in the Thirteenth Circuit. Programs include family mediation, worthless checks, juvenile arbitration, citizen dispute settlement and court commissioners. In excess of 10,000 cases were reported to have been handled by these programs in 1985.
Fifteenth Judicial Circuit (Palm Beach County). The Fifteenth Circuit currently has twenty-three circuit and twelve county court judges. A circuit judge and a county judge were added in each of the last two years. We certify the need for one additional circuit judgeship and one additional county judgeship for FY 1986-87.
In spite of the authorization of new judges in the last two years, the rate of increase in filings has outstripped the court’s ability to keep pace with the overall caseload. Filings increased 14.5% from 1984 to 1985 and 26.1% from 1983 to 1985. Filings per judge have increased from 1,599 in 1983 to 1,924 in 1985, notwithstanding the additional judges. Based on projected 1986 filings, the filings per judge ratio for the Fifteenth Circuit will remain above 1,900 cases. While the Fifteenth Circuit ranked twelfth in dispositions per judge, it ranked fifth in weighted dispositions per judge. This circuit was ranked fourth in pending cases per judge as of December 31, 1985. The addition of a judge in January 1986 would still leave the Fifteenth Circuit ranked fifth in that category.
The Fifteenth Circuit reports that additional manpower is needed in the civil division. Trials can be set no earlier than four to seven months in advance. The court reports that a backlog is developing in the criminal division, as well.
Continuing increases in filings are an effect of the general growth of the Fifteenth Circuit. It is ranked eighth in population per judge and seventh in population at risk. The population is projected to grow at a continued high rate through 1990 and the year 2000. The Fifteenth Circuit ranks third in attorneys per judge.
Substantial supplemental judicial resources have been committed to the Fifteenth Circuit. There were 258 retired judge days paid in FY 1984-85. Additionally, 104 county judge days were paid in the same fiscal year. Judicial resources are supplemented by alternative dispute resolution programs including domestic mediation, a juvenile alternative services project, volunteer mediation and domestic relations commissioners. The court also uses special masters in complex cases.
Palm Beach County is ranked third in filings per judge and second in dispositions per judge, among the 67 counties. Despite a slight drop in total jury trials, this county remains ranked fifteenth in jury trials per judge. It ranks fourth in attorneys per judge.
Eighteenth Judicial Circuit (Brevard and Seminole Counties). The Eighteenth Circuit currently has fourteen circuit and nine county court judges. We certify the need for one additional county judge in Brevard County and one additional circuit judge in FY 1986-87.
At ninth, Brevard County ranked relatively high in 1985 county court filings per judge. It ranked ninth in jury trials per judge. Geographical factors are significant in this certification in that the court operates out of three locations. It is difficult and time consuming for judges to travel between those locations. County judges have not generally been available to assist in circuit court. Two hundred retired judge days were paid in FY 1984-85, yet only three and one-half days of additional compensation for county judges were paid in that same year. A 1984 study of workload distribution for the county court, conducted by the Office of the State Courts Administrator, suggested the need for an additional judge to be assigned to the central portion of the county.
The Eighteenth Circuit, while realizing a slight decline in the number of circuit jury *1269 trials over the past three years, is still ranked second in jury trials per judge. It ranks sixth in filings per judge and eighth in dispositions per judge. Total filings increased 15% from 1984 to 1985 and 31.1% since 1983. Filings per judge increased from 1,491 in 1983 to 1,955 in 1985. It ranks fifth in population per judge. The same geographical factors that inhibit the sharing of workload in the county court affect the circuit court. Case scheduling is complicated at both levels, since attorneys may have cases pending on the dockets of judges at multiple locations. These factors, coupled with the requirement for two hundred retired judge days in FY 1984-85, support the Court’s request for an additional circuit judge.
Nineteenth Judicial Circuit (Indian River, Martin, Okeechobee, and St. Lucie Counties). The Nineteenth Circuit currently has nine circuit and seven county court judgeships. The need for one additional circuit judgeship was certified in each of the past three years, and a new judgeship was authorized in 1985. We certify the need for one additional circuit judgeship in FY 1986-87.
The Nineteenth Circuit ranked second in filings per judge and first in dispositions per judge in 1985. It ranked first in pending cases per judge as of December 31, 1985. It has realized a significant population increase, which is expected to continue, and ranks sixth in population per judge. Due to the size of the circuit (2,423 square miles), travel time is considerable.
The circuit has been heavily reliant on county judges to assist in handling circuit cases. Three hundred two days of additional compensation were paid to county judges in FY 1984-85. Also, 126 retired judge days were required in the circuit, during the last fiscal year. Some of the workload problems facing judges in the Nineteenth Circuit are attributable to the increasing complexity of drug related cases and an increase in motions practice. This circuit also includes within its boundaries, four state institutions which house in excess of 1,700 inmates.
Twentieth Judicial Circuit (Charlotte, Collier, Glades, Hendry, and Lee Counties). The Twentieth Circuit currently has twelve circuit and nine county court judges. The need for one additional circuit judgeship is certified in the second year of the biennium, as it was last year.
The Twentieth Circuit ranks third in population per judge, and is projected to be ranked first by 1990. It is ranked fourth in the ratio, of jury trials per judge. It ranks fifth in the combined factors of filings, dispositions, trials, population and attorneys per judge. It ranks relatively high in filings per judge, at ninth. Total filings have increased 19.3% since 1983.
Two of the county court judges in the Twentieth Circuit are nonlawyers and cannot assist on the circuit bench. The circuit covers a large geographic area. This has made it more difficult for judges in one location to backup those in another. The circuit court has been reliant on county judges, paying eighty-four days of additional compensation in FY 1984-85. Thirty-seven retired judge days were used in the circuit in that fiscal year.
CERTIFICATION
Accordingly, pursuant to article V, section 9, Florida Constitution, we certify the need for five additional district court of appeal judgeships, seventeen additional circuit court judgeships, and seven additional county court judgeships for fiscal year 1986-87. These judicial officers are necessary for the proper administration of justice, and we recommend they be made permanent and funded by the state. These new judgeships should become effective August 1, 1986.
BOYD, C.J., and OVERTON, EHRLICH, SHAW and BARKETT, JJ„ concur.
ADKINS, J., concurs specially with an opinion, in which BARKETT, J., concurs in part.
*1270 BARKETT, J., concurs in part with ADKINS, J., with an opinion, in which EHRLICH, J., concurs.
McDONALD, J., concurs in result only.

. Population at risk is the number of males between the ages of 18 and 34. Since the vast majority of people charged with criminal offenses are within this age group, the population at risk is a factor influencing criminal filings.